## Dailey et al. v. Hines et al.

*Robert M. Gilkey,* for plaintiff; *J. W. McWilliams,* for defendants.

McLAUGHRY, P. J., November 17, 1933.—This comes before the court upon preliminary objections to a bill in equity seeking a decree directing the foreclosure of a mortgage. The preliminary objections are filed by Nellie C. Hines and Howell Q. Hines, her husband, two of the defendants. The Stoneboro Park

Company, the other defendant, has not joined in the preliminary objections and seems to be in accord with the action taken by the plaintiffs.

The plaintiffs, A. L. Dailey, F. M. Houser, and W. B. Parker, are the trustees named in a certain indenture of mortgage executed by Nellie C. Hines and Howell Q. Hines, her husband. It seems that the Hineses were the owners of several tracts or parcels of land adjoining the lake known as Sandy Lake. On January 21, 1926, they executed and delivered to the plaintiffs as trustees a certain mortgage dated January 1, 1926, covering the several parcels of real estate in said mortgage particularly bounded and described, as security for an issue of coupon bonds by the said Nellie C. Hines and Howell Q. Hines in the amount of $30,000. The bonds for which the mortgage was given as security were issued to pay the indebtedness then existing as an encumbrance against the real estate described in the mortgage, and to improve, or to insure the improvement, of a portion of said real estate lying adjacent to the waters of Sandy Lake. The bonds were executed and delivered by the said Nellie C. Hines and Howell Q. Hines in the manner specified in the mortgage to divers persons and corporations, in pursuance of the purposes in said mortgage alleged, for which persons and corporations the plaintiffs are trustees.

On January 22, 1926, one day after the execution of the mortgage, Nellie C. Hines and Howell Q. Hines executed deeds conveying the several parcels of real estate covered by the mortgage to the Stoneboro Park Company, it being recited in the deeds that the conveyance was not subject to the mortgage.

Later, the Stoneboro Park Company improved and laid out in lots a portion of the said real estate, the plan being known as the "Stoneboro Park Company Development". A number of the lots appearing in the plan of said development have been released from the lien of the mortgage.

The said mortgage is in default. Taxes assessed have not been paid by the mortgagors or by the Stoneboro Park Company, as provided in the mortgage. The cost of insurance against loss by fire has not been paid by the mortgagors or by the Stoneboro Park Company, and it has been necessary for the trustees to pay said taxes and the cost of insurance, in order to protect the interests of the holders of the bonds. The interest due and payable January 1, 1931, upon the coupons attached to the bonds has not been paid, no interest has been paid on said bonds since that date, and there are no funds available to pay the same. The trustees, in order to protect the interests of the bondholders, filed a bill for the foreclosure of the mortgage, alleging that a judicial sale is necessary, so that the property may be sold free and discharged of liens, and that the proceeds should be paid and distributed to and among the holders of the bonds.

The preliminary objections are three in number, but it seems from the briefs that only two of these are pressed.

1. Does equity in Pennsylvania have jurisdiction?

It is alleged by the objectors that the trustees appear simply as mortgagees, and in no other capacity. From a careful examination of the facts set forth in the bill and copy of mortgage attached, we do not find that this is the usual mortgagee-mortgagor relation. At the time the deed of trust was executed, the properties were subject to certain mortgages and liens of record. The $30,000 issue of bonds under date of January 1, 1926, was expressly for the purpose of paying said liens and to improve or insure the improvement of that portion of the real estate covered by the mortgage and lying adjacent to the waters of Sandy Lake. It appears without question that the issue of bonds, in amount $30,000, was for the express purpose, as stated in the instrument itself, of paying the liens and to improve the property. Article II of the mortgage provides

that the funds received from the sale of bonds were to be held in trust by A. L. Dailey, one of the trustees, as treasurer, and to be applied to the payment of the liens specified in the instrument, as liens against the properties covered by the mortgage. It seems clear that the trustees, A. L. Dailey, F. N. Houser, and W. B. Parker, accepted the mortgage under a definite trust arrangement, and were to disburse the funds received from the sale of bonds for certain purposes specified. The objectors have cited the case of Ashurst et al. v. The Montour Iron Co., 35 Pa. 30, alleging that this decision of the Supreme Court is authority for the proposition that the courts have no jurisdiction in equity to decree a sale of mortgaged premises at the instance of the mortgagee. From an examination of this case, we are convinced that it does not apply to the facts in this case. In the case before us, the mortgagee trustees are charged by the mortgagors with the receipt and disbursement of funds realized from the bond issue. In this regard, it differs from the Ashurst case. The trustees there had nothing to do with the funds received from the sale of bonds. In the case cited, the mortgage provided for enforcing its terms by sci. fa. proceedings, while in this case the mortgage refers to both legal and equitable means of enforcement. There are many facts found to be different in the mortgage in this case from the mortgage in the Ashurst case. In that case the court said (p. 43):

"When these parties contracted, they contemplated the possibility of default of payment, and provided for it. They said the trustees should redress any such breach, by assuming possession of the premises for the benefit of the creditors, or by proceeding by *scire facias* to bring them to a judicial sale, or by selling the premises themselves, after certain stipulated notice."

We are of the opinion, after a careful examination of the mortgage, that it contemplated both legal and equitable remedies.

The other question raised is whether or not there is an adequate remedy at law. This raises the question whether or not the mortgage is a corporate mortgage. It is true that it is not executed by a corporation, but we are of the opinion that it can be so considered because of the fact that the following day after its execution it was assumed by a corporation, the Stoneboro Park Company, for the purpose for which it was given. A court of equity has the right to infer the intention of the parties from the facts as they appear, and is justified in concluding that the instrument is a corporate mortgage, and it has jurisdiction under the provisions of the Act of May 4, 1893, P. L. 29, which says:

"The several courts of common pleas of this Commonwealth having the powers of a court of chancery shall have jurisdiction of all litigation and disputes between stockholders and parties claiming to be stockholders, and between creditors and stockholders and creditors and the corporation, of all corporations within this State".

We have examined the cases cited by counsel for the objectors, and are of the opinion that the facts in these cases are not similar to those we have here. We find no merit in the preliminary objections to the bill, and they are therefore dismissed.

### Order

And now, November 17, 1933, this matter came on to be heard on objections to the bill of equity, and was argued by counsel; whereupon, after due consideration, the objections are dismissed.  From W. G. Barker, Mercer, Pa.